IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEPHEN JOSEPH HYETT,

     **Plaintiff,**

v.                                    CIVIL ACTION NO.: 1:19-CV-216
                                            (JUDGE KEELEY)

ANDREW SAUL,
**Commissioner of Social Security,**

     **Defendant.**

### MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION [DKT. NO. 17]

On December 5, 2019, the plaintiff, Stephen Joseph Hyett ("Hyett"), filed a complaint seeking review of an adverse decision of the Commissioner of Social Security ("the Commissioner") (Dkt. No. 1). After the parties filed cross motions for summary judgment, Magistrate Judge Michael J. Aloi entered a Report and Recommendation ("R&R") (Dkt. No. 17) recommending that the Court deny Hyett's motion for summary judgment (Dkt. No. 9), grant the Commissioner's motion for summary judgment (Dkt. No. 10), and dismiss this case with prejudice. For the reasons discussed below, the Court **ADOPTS** the R&R in its entirety.

## I.  BACKGROUND

On May 22, 2014, Hyett filed a claim under Title II of the Social Security Act ("the Act") for Child Disability Benefits with a disability onset date of September 5, 1976, the date of his birth

**HYETT V. USA**                                                 **1:19CV216**

## MEMORANDUM OPINION AND ORDER ADOPTING
## THE REPORT AND RECOMMENDATION [DKT. NO. 17]

(R. 10, 13).[1] The child disability benefits provision allows payment of benefits to a claimant over the age of eighteen (18) whose disability began prior to age twenty-two (22) (R. 11-12). Hyett alleged that, prior to age twenty-two (22), he suffered from hydrocephalus, weakness on his left side, and no peripheral vision or vision below, which made him unable to work (R. 122).

The Commissioner denied Hyett's claim initially and on reconsideration (R. 10). At Hyett's request, Administrative Law Judge Nikki Hall ("the ALJ") conducted a hearing on May 23, 2017, at which Hyett was represented by counsel, and she subsequently denied his claim (R. 142-51). In a written decision dated June 12, 2017, the ALJ found that Hyett had not engaged in any substantial gainful activity since his alleged onset date and suffered from severe impairments that significantly limited his ability to perform work activities. These impairments included congenital hydrocephalus, right exotropia and nystagmus, left hemiparesis, and epilepsy (R. 144-45). Nevertheless, the ALJ concluded that Hyett was not disabled prior to age twenty-two (22) because he did not have a combination of impairments that met or medically equaled the severity of one of the Act's listed impairments and had the

---

[1] Throughout this Memorandum Opinion and Order, the Court cites the administrative record (Dkt. No. 7) by reference to the pagination as assigned by the Social Security Administration.

HYETT V. USA                                              1:19CV216

## MEMORANDUM OPINION AND ORDER ADOPTING
## THE REPORT AND RECOMMENDATION [DKT. NO. 17]

residual functional capacity ("RFC") to perform sedentary work with some limitations (R. 146).

Upon review of the June 12, 2017 decision, the Appeals Council found that, although the ALJ had included Hyett's left hemiparesis as a severe impairment, she did not include any manipulative limitation in his RFC to account for this condition (R. 159). It therefore remanded Hyett's claim for further evaluation of his subjective complaints and RFC (R. 160).

Following a rehearing on November 1, 2018, the ALJ denied Hyett's claim (R. 10), again concluding that Hyett was not disabled because, prior to age twenty-two (22), he did not have a combination of impairments that met or medically equaled one of the Act's listed impartments, and he had the RFC to perform sedentary work with some limitations (R. 15-16). In her analysis, she did include an additional limitation in Hyett's RFC to account for his left hemiparesis, noting that he could not perform work that required continuous handling, pushing, or pulling with the non-dominant left hand and arm (R. 16).

The Appeals Council declined review on November 18, 2019, thus rendering the ALJ's decision the final decision of the Commissioner for purposes of appeal (R. 1). Hyett filed his appeal in this Court on December 5, 2019, alleging that the ALJ's decision is not supported by substantial evidence and is contrary to law

3

HYETT V. USA                                                    1:19CV216

## MEMORANDUM OPINION AND ORDER ADOPTING
## THE REPORT AND RECOMMENDATION [DKT. NO. 17]

because (1) his RFC includes no restriction to accommodate for severe vision problems, (2) his RFC does not adequately account for his left hand and arm problems, (3) the ALJ prohibited him from effectively cross-examining the vocational expert ("VE"), and (4) his RFC does not adequately account for Hyett's mental limitations (Dkt. Nos. 1, 9-1 at 1-2).

Magistrate Judge Aloi received this case for review and, pursuant to 28 U.S.C. § 636 and this Court's local rules, recommended that the ALJ's decision should be upheld because (1) the ALJ incorporated work-setting limitations into Hyett's RFC which account for his vision impairment, (2) Hyett's RFC determination accounts for his limited use of his left hand and arm, (3) the ALJ was unbiased and provided a fair hearing, and (4) Hyett's RFC determination accommodates his mental condition as documented during the relevant time frame (Dkt. No. 17 at 28-36). Hyett timely objected to the R&R on February 9, 2021 (Dkt. No. 18).

## II.  STANDARDS OF REVIEW

### A.  The Magistrate Judge's R&R

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must review de novo any portion of the magistrate judge's recommendation to which an objection is timely made. Courts will uphold portions of a recommendation to which no objection has been made if "there is

4

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

no clear error on the face of the record." See Diamond v. Colonial

Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

### B.    The ALJ's Decision

Judicial review of the Commissioner's final decision is

limited to determining whether the ALJ's findings are supported by

substantial evidence and whether she correctly applied the law.

See 42 U.S.C. § 405(g); Milburn Colliery Co. v. Hicks, 138 F.3d

524, 528 (4th Cir. 1998). It is the duty of the ALJ to make findings

of fact and resolve disputed evidence. King v. Califano, 599 F.2d

597, 599 (4th Cir. 1979).

Substantial evidence is that which a "reasonable mind might

accept as adequate to support a conclusion." Hays v. Sullivan,

907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971) (internal quotation omitted)). "[I]t

consists of more than a mere scintilla of evidence but may be

somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d

171, 176 (4th Cir. 2001) (alteration in original) (quoting Laws v.

Celbrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for

substantial evidence, [the Court should not] undertake to re-weigh

conflicting evidence, make credibility determinations, or

substitute [its] judgment for that of the Secretary." Id.

(alteration in original) (quoting Craig v. Chater, 76 F.3d 585,

589 (4th Cir. 1996)). That "two inconsistent conclusions" may be

HYETT V. USA                                              1:19CV216

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

drawn from evidence "does not prevent an administrative agency's findings from being supported by substantial evidence." Sec'y of Labor v. Mut. Mining, Inc., 80 F.3d 110, 113 (4th Cir. 1996) (internal quotation omitted).

Nonetheless, "[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." Diaz v. Chatter, 55 F.3d 300, 307 (7th Cir. 1995) (internal citations omitted). The Court must be able to "track the ALJ's reasoning and be assured that the ALJ considered the important evidence." Id. at 308 (quoting Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995)).

### III. DISCUSSION

The Court incorporates by reference Magistrate Judge Aloi's summary of the procedural and factual background and articulation of the Commissioner's five-step evaluation process (Dkt. No. 17 at 2-23). Finding no clear error, it adopts the portions of the R&R to which Hyett has not objected. Further, following a de novo review of the issues in dispute, the Court **ADOPTS** the R&R in its entirety.

### A.   The ALJ's RFC determination is supported by substantial evidence.

According to Hyett, his RFC is not supported by substantial evidence because the ALJ failed to adequately account for severe

6

MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 17]

vision impairment, left hand and arm problems, and mental limitations (Dkt. No. 9-1 at 1-2). Following a full review of the record, the Court concludes that the ALJ incorporated functional limitations into Hyett's RFC to account for his physical and mental conditions, and that her assessment is supported by substantial evidence.

### 1.   Relevant Law

If, as here, a claimant's severe impairments neither meet nor equal one of the Act's listed impairments, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e). A claimant's RFC "is the most he can still do despite his limitations." § 404.1545. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). "Evaluating an RFC requires an ALJ to consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work." Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 387 (4th Cir. 2021) (internal quotations omitted). The ALJ must also consider the claimant's alleged symptoms and the extent to which they can "reasonably be accepted as consistent with the objective medical evidence and other evidence." Shinaberry v. Saul, 952 F.3d 113, 118-19 (4th Cir. 2020).

**HYETT V. USA**                                                                **1:19CV216**

## MEMORANDUM OPINION AND ORDER ADOPTING
## THE REPORT AND RECOMMENDATION [DKT. NO. 17]

### 2.    ALJ's Determination

In her written decision dated November 18, 2018, the ALJ determined that, prior to attaining age twenty-two (22), Hyett's severe impairments did not meet or medically equal one of the Act's listed impartments (R. 13-15). The ALJ then considered a variety of medical and nonmedical evidence of Hyett's physical and mental condition[2] and assessed Hyett's RFC (R. 15-20).

The ALJ discussed in detail Hyett's medical history dating back to his birth, noting that there were no medical source statements for the relevant period. The ALJ also considered opinions on Hyett's condition as an adult, but gave these little weight because they either did not address Hyett's functioning during the relevant time period, were offered well after he turned twenty-two (22) years old, or contradicted evidence of his condition from the relevant time period (R. 19-20). The ALJ also received testimony from vocational experts. Finally, she considered the testimony of Hyett and his mother, Judith Hyett, but explained that their testimony of his symptoms was not entirely consistent with the evidence of record (R. 16-17).

The ALJ then determined Hyett's RFC as follows:

> Prior to attaining age 22, the claimant had the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) (i.e. was able to occasionally

---

[2]  As noted above, the Court adopts the R&R's extensive summary of the evidence considered by the ALJ (Dkt. No. 17 at 3-22).

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 17]**

> lift and/or carry no more than 10 pounds; frequently
> lift and/or carry articles like docket files, ledgers,
> and small tools; stand and/or walk, with normal breaks,
> for a total of 2 hours in an 8-hour workday; and sit,
> with normal breaks, for a total of about 6 hours in an
> 8-hour workday), except the claimant could not climb
> ladders, ropes, or scaffolds; could only occasionally
> kneel and crawl; was limited to work that did not require
> exposure to hazards, such as dangerous, moving machinery
> or unprotected heights; was limited to unskilled work in
> occupations with an SVP of two or lower, performed in an
> environment that did not require fast paced production
> quotas or high volume piece mill quotas, no greater than
> occasional changes in work routine or work setting, and
> which required only simple work related decisions
> making; and was limited to work that did not require
> continuous handling, pushing, or pulling with the non-
> dominant left hand and arm.

(R. 15-16). The ALJ characterized this as a "very restrictive"

RFC. Id.

> ### 3.   The ALJ's RFC determination properly accounted for
>     Hyett's vision problems.

Hyett contends that his RFC is not supported by substantial

evidence because it does not include a restriction for his severe

vision problems or explain why such restriction was not included

(Dkt. No. 18 at 3-4). The magistrate judge concluded that the ALJ

had incorporated work-setting limitations to account for Hyett's

vision impairment and that the resulting RFC was supported by

substantial evidence.

HYETT V. USA                                              1:19CV216

**MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 17]**

The ALJ included Hyett's right exotropia[3] and nystagmus[4] as severe impairments and discussed his history of left homonymous hemianopia[5] as documented during the relevant time period (R. 13, 17-19). The ALJ also considered testimony from Hyett's mother that he has no peripheral vision or vision below (R. 16). And, throughout her opinion, the ALJ discussed how Hyett's combination of physical impairments affected his overall ability to function during the relevant time frame.

Based on this evidence, the ALJ evaluated whether Hyett's eye conditions met or medically equaled one of the Act's listed impairments. To accommodate his vision issues and reported symptoms, the ALJ incorporated two functional limitations into his RFC: Hyett was limited to sedentary work that did not require (1)

---

[3] Exotropia is an eye condition in which the eyes turn outward. Am. Optometric Ass'n, Strabismus, https://www.aoa.org/healthy-eyes/eye-and-vision-conditions/strabismus?sso=y (last visited March 25, 2021).

[4] Nystagmus is a vision condition in which the eyes make repetitive, uncontrolled movements. Am. Optometric Ass'n, Nystagmus, https://www.aoa.org/healthy-eyes/eye-and-vision-conditions/nystagmus?sso=y#:~:text=Nystagmus%20is%20a%20vision%20condition,or%20in%20a%20circular%20pattern (last visited March 25, 2021).

[5] Homonymous hemianopia is an eye condition which affects a person's field of vision. Cleveland Clinic, Homonymous Hemianopia, https://my.clevelandclinic.org/health/diseases/15766-homonymous-hemianopsia-#:~:text=is%20homonymous%20hemianopsia%3F-,Homonymous%20hemianopsia%20is%20a%20condition%20in%20which%20a%20person%20sees,both%20eyes%2C%20not%20just%20on (last visited March 25, 2021).

HYETT V. USA                                              1:19CV216

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

"climb[ing] ladders, ropes, or scaffolds" or (2) "exposure to hazards, such as dangerous, moving machinery or unprotected heights" (R. 19)("The climbing and hazard limitations more than fully accommodate [Hyett's] vision and balance issues").

Accordingly, Hyett's contention that the ALJ failed to include an accommodation for vision impairment in his RFC is inaccurate. The ALJ identified Hyett's eye conditions and considered the available evidence regarding his vision. She also considered the impact of Hyett's combination of physical conditions on his ability to function during the relevant time frame. Significantly, despite his eye conditions, Hyett attended community college, worked part-time, and volunteered in the community. Because these eye conditions did not prevent him from performing these activities, the ALJ did not find his condition disabling, but incorporated work setting limitations into his RFC to accommodate his reported functional limitation.

Based on the ALJ's discussion of the relevant evidence and explanation for adopting vision limitations into Hyett's RFC assessment, the Court finds that the RFC is supported by substantial evidence.

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 17]**

    **4.    The ALJ's RFC determination properly accounted for**
    **Hyett's left hemiparesis.**

Hyett contends that the ALJ's RFC determination failed to adequately account for his left hemiparesis,[6] specifically the problems that it caused in his left arm and hand (Dkt. No. 18 at 4-6). In his R&R, the magistrate judge found that the ALJ had incorporated limitations into Hyett's RFC to account for this condition, and that the ALJ's RFC determination was supported by substantial evidence.

On remand from the Appeals Council, the ALJ reconsidered whether any manipulative limitations should be included in Hyett's RFC to account for his left hemiparesis, one of his severe impairments (R. 15-16, 19). After reconsidering Hyett's medical records, manipulative limitations, and subjective complaints, the ALJ determined that, due to his left hemiparesis, Hyett's RFC was limited to sedentary work that does not require climbing, exposure to hazards, or "continuous handling, pushing, or pulling with the non-dominant left hand and arm." (R. 15-16).

In assessing these limitations, the ALJ considered Hyett's physical examination reports from the relevant period that "did not present any disabling functional limitations," but which also

---

[6]   Hemiparesis is the mild loss of strength in one side of the body. Nat'l Ctr. for Biotechnology Info., Hemiplegia/Hemiparesis, https://www.ncbi.nlm.nih.gov/medgen/852561 (last visited March 25, 2021).

## MEMORANDUM OPINION AND ORDER ADOPTING
## THE REPORT AND RECOMMENDATION [DKT. NO. 17]

contained some conflicting accounts of his left side weakness (R. 18-19). As the ALJ discussed, during his physical examinations, Hyett showed gait disturbances and left hemiparesis of his upper and lower extremities. Id. But other physical examination notes state that he had normal strength and intact sensations, and in 1997, at age twenty-one (21), he had denied any extremity weakness. Id. The ALJ also considered his ability to take community college classes, work part-time as a janitor, and volunteer in his community. Id.

The ALJ ultimately concluded that, "[g]iven all of these factors, there is no reason to believe that the claimant was incapable of sedentary work activities, with some postural, environmental, and manipulative limitations" (R. 18-19). She then explained why his exertional limitations during the relevant time frame would not have precluded him from performing sedentary work activities (R. 19). According to the ALJ, Hyett's documented gait disturbance suggested that he would be incapable of standing or walking for the majority of the day and his hypotrophy of the left upper and lower extremities suggested that he could not lift more than 10 pounds (R. 19). Even with these limitations, however, Hyett was able to complete sedentary work activities only requiring lifting up to 10 pounds occasionally and standing and walking less than the majority of the day. Id.

HYETT V. USA                                                1:19CV216

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 17]**

The ALJ also considered the testimony of Hyett and his mother regarding the severity of his left side weakness, but found that their statements concerning the "intensity, persistence and limiting effects of these symptoms" were not entirely consistent with the medical and other evidence in the record (R. 16-17). Accordingly, she determined that Hyett could use his left hand in a work setting, but included several manipulative limitations in Hyett's RFC to account for this reported weakness:

> Providing claimant with every benefit of the doubt, and based upon the claimant's assessment of left hemiparesis with physical examinations showing diffuse hyperreflexia and hypotrophy of the left upper extremity, the undersigned has included a limitation that the claimant was limited to work which did not require continuous handling, pushing, or pulling with the non-dominant left hand and arm. However, no further manipulative limitations are warranted, as he was also assessed with intact strength and sensations during the relevant time period and he specifically denied extremity weakness or paresthesia in 1997. Further, the record contains no evidence of treatment for, or issues with the claimant's inability to use his left arm other than one notation in 1992, that he was using his left arm as a "helper" . . . In addition to the above manipulative limitations, the limitation to sedentary more than fully accommodates any residual weakness he may have experienced related to his left hemiparesis. Moreover, the climbing and hazard limitations fully accommodate the claimant's vision and balance issues, as well as any residual left sided weakness of the left upper extremity.

(R. 19).

Based on this extensive discussion, it is clear that the ALJ carefully considered the available medical and nonmedical evidence

HYETT V. USA                                                1:19CV216

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

before determining the appropriate RFC limitations for Hyett's left hemiparesis. She also thoroughly explained why certain evidence carried more weight, and why the incorporated functional limitations were necessary and appropriate based on Hyett's physical condition. Therefore, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

Hyett also contends that the R&R and the ALJ "paid lip service to SSR 96-9p which all but mandates a finding of disabled" in his circumstances. Id. at 4-5. Social Security Ruling 96-9p emphasizes that a "RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare," but also, that such a finding "does not necessarily equate with a decision of 'disabled.'"

Although Hyett is one of the rare individuals with a RFC for less than a full range of sedentary work, this status does not "mandate" a finding of disabled as Hyett asserts. Rather, pursuant to SSR 96-9p, whether Hyett is disabled "depend[s] primarily on the nature and extent of [his] functional limitations or restrictions." As required by 96-9p, the ALJ reached her conclusion that Hyett was not disabled only after thoroughly considering the nature and extent of his left hemiparesis and other limitations.

HYETT V. USA                                          1:19CV216

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

Hyett correctly points out that SSR 96-9p states that most unskilled sedentary jobs require good use of both hands and that "any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." However, based on the evidence presented, the ALJ did not find it appropriate to incorporate any significant manipulative limitation into Hyett's RFC that significantly eroded the unskilled sedentary occupational base. Rather, she accounted for Hyett's left hemiparesis by incorporating manipulative limitations into his RFC that are supported by substantial evidence. Furthermore, the vocational expert testified that there was an occupational base in the national economy for this limited range of sedentary work. The ALJ therefore did not err in concluding that Hyett was not disabled in light of the guidance provided in SSR 69-9p.

> **5.  The ALJ's RFC determination properly accounted for Hyett's mental condition.**

Finally, Hyett objects to the magistrate judge's recommendation that, in his RFC, the ALJ adequately accommodated Hyett's mental condition as it was documented prior to age twenty-two (22) (Dkt. Nos. 17 at 35-36, 18 at 9-10). In considering Hyett's mental condition, the ALJ reviewed his educational history and medical records as well as his own testimony.

HYETT V. USA                                              1:19CV216

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

The ALJ first noted that Hyett's early education records contained "passing references to borderline intellectual functioning" (R. 14). She then reviewed the results of an IQ test administered to Hyett in 1992 by a school psychologist. The psychologist's records indicated that, although Hyett's full-scale IQ was depressed, this depression was not due to a deficit in his intellect, but rather his inability to use both hands equally when taking the test. Id. These records also indicated that his Verbal Scale Intelligence Quotient of 105 placed him in the "Average Classification" at the 63rd percentile and that he scored in the "superior range" in the portion of the test measuring overall reasoning ability. Id. The ALJ therefore concluded that the results of this IQ test did not suggest that Hyett had "any cognitive difficulty that would cause mental functional limitations." Id. She further considered Hyett's periodic academic struggles and that, towards the end of the relevant time period, his academic performance improved and he ultimately graduated from John Marshall High School and attended community college. Id.

She then discussed Hyett's cognitive functioning as documented in his medical records, which indicate that between the ages of seventeen (17) and twenty (20) Hyett had no behavioral or academic difficulties, attended community college, maintained passing grades, and volunteered at church. His physician noted

HYETT V. USA                                                    1:19CV216

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 17]**

that at age twenty (20) Hyett had "done remarkably well" and was "quite functional" (R. 17-18). The ALJ also considered Hyett's own description of his ability to use technology and engage in volunteer activities, none of which suggested he had significant cognitive deficits (R. 16).

Based on this evidence, the ALJ determined that Hyett had no medically determinable mental impairments (R. 14). Nevertheless, in Hyett's RFC, she included "mental functional limitations to accommodate [his] difficulty with the speed and pace of tasks" (R. 14). Specifically, she limited his RFC to "unskilled work in occupations with an SVP of two or lower, performed in an environment that did not require fast paced production quotas or high volume piece mill quotas, no greater than occasional changes in work routine or work setting, and which required only simple work related decisions making" (R. 15-16).

Accordingly, the ALJ thoroughly considered the available evidence regarding Hyett's mental condition during the relevant time frame, incorporated functional limitations to account for his documented mental limitations, and supported her RFC assessment with citations to both medical and nonmedical evidence. Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

18

**MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 17]**

**B.    The ALJ did not err in restricting Hyett's ability to cross-examine the vocational expert.**

Hyett contends that, at a hearing on November 1, 2018, the ALJ improperly prohibited him from cross-examining the vocational expert (Dkt. No. 18 at 7-9). In the R&R, however, the magistrate judge found that the ALJ had committed no error because Hyett "attempted a repeated line of questioning about how or whether a certain job highlighted by the vocational expert in a hypothetical could be performed," and that the ALJ properly gave him an opportunity to cross-examine the vocational expert through the use of additional hypotheticals (Dkt. No. 17 at 35). The magistrate judge concluded there was no evidence that the ALJ was biased against Hyett or unable to issue a fair decision. Id.

Hyett objects to the R&R's finding that he was attempting a repeated line of questioning, and asserts that his counsel was "simply trying to ascertain what duties the vocational expert was saying the hypothetical individual could perform." (Dkt. No. 18 at 9). Hyett also objects that he did not allege the ALJ was biased, but rather that the ALJ denied him procedural due process by improperly limiting his cross-examination of the vocational expert. Id. at 7. Based on its review of the record, the Court concludes that the ALJ did not deny Hyett due process. In point of fact, his attorney pursued a repetitive line of questioning that the ALJ reasonably limited.

19

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

To be sure, a claimant has a right to procedural due process, or a full and fair hearing of his claim, at a hearing before an ALJ. Richardson v. Perales, 402 U.S. 389, 401-02 (1971); Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980) (citing 20 C.F.R. 404.927, 416.1441). And the right to procedural due process includes the opportunity to cross-examine witnesses. 20 C.F.R. § 416.1450(e); Kelly v. Saul, 2019 WL 3544071, at *3 (E.D.N.C. Aug. 1, 2019); see also Haddock v. Apfel, 196 F.3d 1084, 1090 (10th Cir. 1999); Townley v. Heckler, 748 F.2d 109, 114 (2d Cir. 1984). But a claimant's right to cross-examine a witness is not absolute, as "the conduct of the hearing rests generally in the examiner's discretion." Richardson, 402 U.S. at 400; See e.g., Kelly v. Saul, No. 2019 WL 3544071, at *4 (E.D.N.C. Aug. 1, 2019) (holding that the ALJ did not err in limiting cross-examination of the vocational expert); Jenkins v. Colvin, 2016 WL 4373701, at *8 (W.D.N.C. Aug. 12, 2016) (same); Riley v. Colvin, 2016 WL 1253187, at *3 (D.S.C. Mar. 31, 2016) (same).

Here, during the hearing in question, the ALJ posed a hypothetical to the vocational expert based on her determination of Hyett's RFC (R. 88-91). In response, the vocational expert identified several occupations that the hypothetical person could perform and testified that those occupations existed in sufficient numbers in the national economy. Id. Hyett's counsel then attempted

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 17]**

to cross-examine the witness about whether Hyett could perform the specific duties of these occupations based on his physical and nonphysical limitations as he perceived them (R. 91-92). The ALJ prohibited this line of questioning because the vocational expert had already testified that the hypothetical person could perform the identified occupations and their respective duties (R. 92-94).

While Hyett had the right to a full and fair hearing on his claim, including the right to cross-examine the vocational expert, the ALJ retained discretion to limit a repetitive and time-consuming examination. Despite the vocational expert's previous testimony that the hypothetical person could perform the identified occupations, Hyett's attorney intended to question the witness on Hyett's ability to perform every duty required by these occupations. As the magistrate judge observed in the R&R, "[n]othing about the ALJ's actions demonstrate anything but an effort to manage her caseload and operations." (Dkt. No. 17 at 35).

The ALJ also did not err by requiring that Hyett's counsel elicit testimony from the vocational expert in response to hypotheticals containing an alternative RFC. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which

HYETT V. USA                                                        1:19CV216

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

fairly set out all of claimant's impairments." <u>Hines v. Barnhart</u>,

453 F.3d 559, 566 (4th Cir. 2006).

Although the ALJ limited the form of Hyett's counsel's cross-examination of the vocational expert, she nevertheless gave him a fair opportunity to cross-examine the witness in an appropriate manner (R. 93-96). The ALJ advised counsel that he could advocate for additional RFC limitations by presenting an alternative hypothetical and RFC to the vocational expert (R. 93-94). Hyett's attorney then proceeded to cross-examine the vocational expert as directed, specifically inquiring about the existence of occupations for an individual with additional physical limitations and whether those occupations existed in sufficient numbers in the national economy. <u>Id.</u>

Therefore, although she limited Hyett's cross-examination of the vocational expert, the ALJ gave his attorney the opportunity to cross-examine the witness in the proper manner, through the use of hypotheticals. Accordingly, the Court finds that the ALJ committed no error and Hyett was not deprived of any procedural due process.

### IV.   <u>CONCLUSION</u>

The Court recognizes that the ALJ was tasked with resolving close and difficult questions in this case. It is not this Court's function to second guess the ALJ's judgment on these issues, but

HYETT V. USA                                                    1:19CV216

### MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 17]

rather to determine whether her conclusions are supported as a matter of law and fact. Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018). In her decision, the ALJ carefully considered the full range of evidence before her and sufficiently explained her reasoning so as to permit meaningful review. With substantial evidence supporting her decision, this Court cannot reweigh the evidence or substitute its own judgment for that of the ALJ.

Therefore, for the reasons discussed, the Court:

1.   **ADOPTS** the R&R (Dkt. No. 17);

2.   **OVERRULES** Hyett's objections (Dkt. No. 18);

3.   **DENIES** Hyett's motion for summary judgment (Dkt. No. 9);

4.   **GRANTS** the Commissioner's motion for summary judgment (Dkt. No. 10); and

5.   **DISMISSES WITH PREJUDICE** this civil action and **DIRECTS** that it be stricken from the Court's active docket.

It is so **ORDERED**.

The Clerk **SHALL** transmit copies of this Memorandum Opinion and Order to counsel of record and enter a separate judgment order. DATED: March 26, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE